UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————

MICHAEL JAMES SNYDER,            )
                                 )
            Plaintiff,            )        Case No. 1:15-cv-137
                                 )
v.                               )        Honorable Janet T. Neff
                                 )
COMMISSIONER OF                  )
SOCIAL SECURITY,                 )
                                 )
            Defendant.            )
_____)

## OPINION

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income (SSI) benefits.   On February 13, 2014, plaintiff filed his application for SSI benefits.   (PageID.177-85).   He alleged a February 1, 2014, onset of disability.   (PageID.177).   Plaintiff's claim was denied on initial review.   (PageID.101-16).   On October 28, 2014, plaintiff received a hearing before an ALJ, at which he was represented by counsel.   (PageID.59-99). On November 10, 2014, the ALJ issued her decision finding that plaintiff was not disabled.   (PageID.43-53).   On January 16, 2015, the Appeals Council denied review (PageID.28-30), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision.   He asks the court to overturn the Commissioner's decision on the following grounds:

I       The ALJ's decision was not based on substantial evidence because she failed to give proper weight to the findings and opinion of plaintiff's treating psychiatrists.

   A.      The ALJ's opinion did not address factors under 20 C.F.R. § 416.927(c), (d), such as the length of treatment, frequency of examination, and the nature and extent of the treatment relationship.

   B.      The ALJ's findings that plaintiff did not meet the requirements of listings 12.04 and 12.06 are not supported by substantial evidence

II.     The ALJ's factual finding regarding plaintiff's residual functional capacity (RFC) is not supported by substantial evidence.

   A.      The ALJ failed to follow 20 C.F.R. § 416.913(d) and SSR 96-03p in the weight she gave to the opinions of plaintiff's treating nurse practitioner and mental health therapist.

   B.      The ALJ failed to consider all plaintiff's impairments and their impact on his ability to perform substantial gainful activity as required by 20 C.F.R. § 416.945(c) and SSR 98-6p and 85-15p.

(Plf. Brief at iii, ECF No. 11, PageID.1035).   Upon review of the record, and for the reasons stated herein, the Commissioner's decision will be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this Court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.   *See Elam ex rel.*

*Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope of the Court's review is limited.  *Buxton*, 246 F.3d at 772.  The Court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."  42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006).  "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference."  *Buxton*, 246 F.3d at 772-73.  "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently."  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion.").  "[T]he

- 3 -

Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after February 13, 2014, the date of his application for SSI benefits. (Op. at 3, PageID.45). Plaintiff had the following severe impairments: "degenerative disc disease of the spine with a small disc protrusion at the L3-4 level and mild to moderate neural foramen stenosis at L5-S1 (Exhibit 10F); pancreatitis (Exhibits 19F-20F); and a major depressive disorder with psychotic features; attention-deficit-hyperactivity disorder (ADHD); post-traumatic stress disorder; and a substance addiction disorder (Exhibit 11F)."[1] (*Id.*). The ALJ found that plaintiff did not have

---

[1] Plaintiff has a significant history of alcohol, prescription medication, marijuana, and other substance abuse. Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to his disability. *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. 2012); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989–90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability. *See Gayheart v. Commissioner*, 710 F.3d 380, 365 (6th Cir. 2013).

an impairment or combination of impairments that met or equaled the requirements

of the listing of impairments.   (*Id.* at 4, PageID.46).   The ALJ found that plaintiff

retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform a range of light work
> as defined in 20 CFR 416.967(b) of the Regulations.   Claimant is able to lift
> and carry a maximum of twenty pounds occasionally and a maximum of ten
> pounds frequently.   He can stand or walk for six hours, and sit for six hours
> in an eight-hour workday.   He can perform postural functions occasionally
> (climbing stairs/ramps, crawling, stooping, kneeling, balancing and crouching).
> He cannot use ladders, ropes, or scaffolds; use hazardous machinery; or work
> at unprotected heights.   He can perform simple, routine tasks involving no
> more than simple, short instructions and simple work-related decisions with
> few workplace changes.   The claimant can have no contact with the general
> public and only occasional contact with coworkers and supervisors.

(Op. at 6, PageID.48).   The ALJ found that plaintiff's testimony regarding his

subjective complaints was not fully credible.   (*Id.* at 6-9, PageID.48-51).

Plaintiff has no past relevant work.   (*Id.* at 9, PageID.51).   Plaintiff was 51

years old on the date he filed his application for SSI benefits.   He was classified as

an individual closely approaching advanced age at all times relevant to his claim.

(*Id.*).   Plaintiff has a high school education.   (*Id.*).   The transferability of job skills

was not an issue because plaintiff did not have past relevant work.   (*Id.*).   The ALJ

then turned to the testimony of a vocational expert (VE).   In response to a

hypothetical question regarding a person of plaintiff's age, and with his RFC,

education, and work experience, the VE testified that there were approximately

18,900 jobs in Michigan that the hypothetical person would be capable of performing.

(PageID.95-96).   The ALJ found that this constituted a significant number of jobs.

Using Rule 202.13 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.   (Op. at 10-11, PageID.52-53).

## 1.

Plaintiff argues that the ALJ should have given controlling weight to the opinions of Kameswara Tatineni, M.D., and Goal Bedi, M.D.   (Plf. Brief at 10-15, PageID.1046-1051; Reply Brief at 2, PageID.1080).   The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.   20 C.F.R. § 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).   A treating physician's opinion that a patient is disabled is not entitled to any special significance.   *See* 20 C.F.R. §§ 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician.").   Likewise, "no special significance"[2] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved

---

[2] "We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section."   20 C.F.R. § 416.927(d)(3); *see Blankenship v. Commissioner*, 624 F. App'x 419, 429-30 (6th Cir. 2015).

to the Commissioner.   20 C.F.R. §§ 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling, deference.   *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).   "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.   Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'"   *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).   A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record."   20 C.F.R. § 416.927(c)(2); *see Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th Cir. 2013) (A treating physician's medical opinion is entitled to controlling weight where "two conditions are met:   (1) the opinion 'is well supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" (citing 20 C.F.R. § 416.927(c)(2)).

The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."   *Buxton v.*

- 7 -

*Halter*, 246 F.3d at 773.   An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight.   *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors.   *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).   "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

- 8 -

Plaintiff filed his application for SSI benefits on February 13, 2014.[3]   On the date he filed his application for SSI benefits, plaintiff was a resident of "long term substance abuse residential housing."   (PageID.211).   He was in the residential alcohol treatment program at New Beginnings from September 2013, until July 2014.   (PageID.63, 70).   On about July 8, 2014, with assistance from his social worker, Raquel DeAnda-Ring, plaintiff was able to obtain a housing voucher.   He lived independently in his own apartment from July 2014, through the date of his administrative hearing.   (PageID.70, 77, 92-93).

On February 5, 2014, plaintiff's social worker, Ms. DeAnda-Ring generated a document that she labeled as a medical summary (PageID.737-44) and completed a mental RFC questionnaire (PageID.745-50).   She had plaintiff's former psychiatrist, Dr. Tatineni, sign both documents.[4]   (PageID.745-50).

---

3 Plaintiff was in jail for an extended period before he filed his application for SSI benefits.   (PageID.357, 361, 366, 521, 527, 536, 538, 542, 552-53, 559, 561, 570, 573, 581-82, 623, 630-31, 656).   Plaintiff is not eligible to receive SSI benefits for any months he was confined in a jail or prison.   *See* 42 U.S.C. § 1382(e)(1)(A); 20 C.F.R. § 416.1325.

Plaintiff submitted evidence generated before he filed his application for SSI benefits.   Such evidence is minimally probative and is considered only to the extent that it illuminates plaintiff's condition during the 9-month period at issue which ran from the date plaintiff filed his application for SSI benefits through November 10, 2014, the date of the ALJ's decision.   *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also Van Winkle v. Commissioner*, 29 F. App'x 353, 358 (6th Cir. 2002); *Edwards v. Commissioner*, No. 1:14-cv-101, 2015 WL 5691192, at * 6 (W.D. Mich. Sept. 28, 2015).

4 "Dr. Tatineni left KCMH in August 2013." (Plf. Brief at 10, PageID.1046).   Dr. Tatineni did not have any treatment relationship with plaintiff during the period at issue.   On March 23, 2012, Dr. Tatineni offered a diagnosis of bipolar mood

On February 18, 2014, plaintiff saw John Cegielski, M.D.   Plaintiff reported that he was frustrated and wanted to get back on Norco for chronic back pain.   Dr. Cegielski noted that plaintiff had been precluded from receiving narcotics because two years earlier he had refused to take a urine test.   Plaintiff's MRI showed arthritic changes and a mild disc bulge.   He was alert and in no acute distress.   His motor examination was normal.   Plaintiff was provided with a contact for appealing his no controlled substances status.   Dr. Cegielski gave plaintiff a prescriptions for Ultram and Cymbalta and encouraged him to engage in low impact exercise to help lower his blood pressure.   (PageID.966-69).

On February 20, 2014, Nurse Overmyer noted that plaintiff arrived on time for his appointment and was in a very pleasant mood.   She noted that plaintiff did a lot of research on the Internet and made many of his decisions regarding medications based on that research.   He wanted to stop taking Geodon.   Ms. Overmyer discontinued that prescription and initiated a trial of Latuda.   Plaintiff reported that

---

disorder, mixed, and ADHD.   Plaintiff was experiencing significant legal problems. (PageID.460-62).   On May 25, 2012, Dr. Tatineni had offered a diagnosis of bipolar mood disorder, generalized anxiety disorder, and a history of ADHD.   Plaintiff did not have any acute medical problems.   (PageID.457-59).   On August 9, 2013, Dr. Tatineni indicated that plaintiff's medications were effective and did not note any undesirable side effects.   Plaintiff had fluctuating moods and thoughts and depression and anger, but they were lessening while he was taking his medications regularly.   His diagnosis of ADHD and bipolar mood disorder, mixed, remained unchanged.   He noted plaintiff's "past history of major depression and suicidal ideations."   He gave plaintiff a GAF score of 60.   He recommended that plaintiff "avoid using any non prescribed medications or any substances of alcohol and continue to be monitored."   (PageID.820-24).

he had started exercising more and felt a big improvement.   She gave plaintiff a GAF score of 51.   Plaintiff's attention and concentration were appropriate.   His thought processes were logical and coherent.     (PageID.411-15).

On April 1, 2014, plaintiff returned to Dr. Cegielski.   He indicated that his low back and neck pain was tolerable with Ultram and Meloxicam.   He related that he had stopped taking Cymbalta because it made no difference.   (PageID.964-66)

On April 15, 2014, plaintiff indicated that his medication was effective and that he was not experiencing any side effects.   (PageID.781).   His sleep pattern was good. (*Id.*).   His behavior and motor activity were normal.   His thought content was appropriate   and   unremarkable.     His   insight   and   judgment   were   good. (PageID.782).

On April 26, 2014, Thuy Nguyn performed a consultative examination. Plaintiff stated that he had back pain and neck pain since a car accident in the 1980s. Plaintiff   did   not   require   any   assistive   device.     He   did   not   have   any   clubbing, cyanosis, or edema.   His gait and station were normal.   Plaintiff retained a good range of motion and strength.   Dr. Nguyn found that plaintiff could lift and carry up to 50 pounds and walk about 2 miles.     (PageID.756-60).

On May 23, 2014, Dr. Cegielski recorded plaintiff's complaint that lower back pain   kept   him   from   being   active   and   that   he   had   problems   sleeping.     Plaintiff reported that Hydrocodone worked the best, but Dr. Cegielski reiterated that plaintiff was not eligible to receive prescriptions for narcotics.   Plaintiff stated that he had

spoken with the office manager and that individual indicated that it was up to Dr. Cegielski whether plaintiff received narcotics.   Plaintiff was oriented to time, place, and person and his speech was normal.   His motor examination revealed no dysfunction.   Plaintiff had no muscle spasms, but lumbosacral spine movements elicited pain.   Dr. Cegielski engaged in a long discussion with plaintiff regarding use and abuse of narcotics and somewhat reluctantly initiated a trial of Norco to help reduce plaintiff's pain.   (PageID.961-64).

On May 14, 2014, plaintiff indicated to Nurse Overmyer that he "never" used alcohol or other substances.   (PageID.775).   Plaintiff described variable moods. He stated that he continued to go to InterAct and was enjoying it.   A month earlier, Nurse Overmyer had provided plaintiff with the sun salutation yoga booklet and plaintiff reported that he had been doing yoga exercises every day.   He had signed up to participate in the yoga class at InterAct.   His first class was scheduled for May 15, 2014.   (PageID.776).   Plaintiff was described as flirtatious and he was making sexual innuendos.   His thought processes were coherent.   His attention and concentration were intact.   (PageID.776).   On June 11, 2014, Nurse Overmyer indicated that plaintiff's mood was much more in the normal range rather than being on the high side.   He was jovial and upbeat.   His thought content was appropriate and unremarkable.   His insight and judgment were appropriate.   (PageID.770-74).

On July 14, 2014, plaintiff returned to Kalamazoo Community Mental Health and Substance Abuse Services and was seen by Nurse Overmyer.   Plaintiff related

that he had always been close to his grandmother and she was dying.   He reported that he had experienced some recent anxiety related to glitches in his getting a new apartment.   Plaintiff's appearance was neat and clean.   He looked like he was ready to go to the beach in his summer clothes and sandals.   His attitude was cooperative and friendly.   His attention and concentration were intact.   His mood was in the normal range and stable.   His thought processes were logical and coherent.   His insight and judgment were "good for the most part."   Nurse Overmyer gave plaintiff a GAF score of 54.   (PageID.764-69).

On August 11, 2014, Nurse Overmyer noted that plaintiff was "neat, clean and appropriately dressed."   His attitude was friendly and cooperative with good eye contact.   His behavior and psychomotor activity were normal.   Plaintiff reported that he had "good" attention and concentration, but he was interested in trying a different medication for ADHD.   Nurse Overmyer supported this change in medication.   Plaintiff's communication and speech normal were normal, but he did appear "a little bit distractible[.]"   He reported that his mood was "4 or 5/10 with 10 being the best, mostly having to do with his grandmother."   His affect is mood congruent.   His thought content was appropriate.   His thought process was coherent and organized.   His insight and judgment were rated from fair to good. Nurse Overmyer discontinued plaintiff's Adderall prescription and began a trial of Vyvanese.   She considered this a positive change in terms of plaintiff's stimulant load.   (PageID.933-38).

On August 12, 2014, Nurse Practitioner Overmyer provided plaintiff's attorney with a statement regarding plaintiff (PageID.928-29) and she signed a "Mental Residual Functional Capacity Form." (PageID.930-32). Nurse Overmyer's statement and her RFC questionnaire are also signed by Gopal Bedi, M.D. (PageID.929, 932), but there is no evidence in this administrative record of any treatment provided by Dr. Bedi.

In August 2014, plaintiff's social worker at InterAct of Michigan, Ms. DeAnda-Ring, indicated that plaintiff had moved into his own apartment on July 8, 2014. His leisure activities included attending and participating in sports or performing arts, reading newspapers, magazines and books, playing recreational games with others, being involved in arts and crafts and going to the movies. Plaintiff reported that he struggled with PTSD related to his father's abuse of his mother and his guilt and remorse for his drunk driving which had killed a woman in 1987. He stated that he frequently contemplated suicide. (PageID.940-57).

On August 28, 2014, plaintiff saw Edward Haughn, D.O. Plaintiff received a Norco prescription, but was required to sign a controlled substances contract. (PageID.960-61).

On September 14, 2014, plaintiff was discharged from Bronson Hospital. (PageID.987). The one page of the discharge summary is all the Bronson Hospital documentation that plaintiff provided stemming from this hospitalization. The fragment of the discharge summary provided indicates that plaintiff appeared at the

hospital emergency room with complaints of abdominal pain.   He reported that he had been an "inpatient at the Gilmore Center for about 10 months before being discharged 6-8 weeks ago to his own apartment.   He started drinking during that time.   He reports drinking 1-2 pints of vodka daily.   Last drank Friday evening." (*Id.*).   Plaintiff was diagnosed with "alcoholic pancreatitis."   He was impulsive and had evidence of ETOH withdrawal.   He was not interested in inpatient ETOH rehabilitation because he had just obtained his housing voucher.   His long term prognosis was "guarded due to alcohol addiction."   (PageID.987).

On September 17, 2014, plaintiff returned to Dr. Haughn.   Plaintiff received extensive counseling regarding his alcohol abuse.   Dr. Haughn noted plaintiff's long history of alcohol dependence.   Plaintiff had achieved a period of alcohol abstinence for about 7 months, but then relapsed for 10 days of heavy drinking.   Four days later, he went to the emergency room with severe abdominal pain.   It was determined that plaintiff had active pancreatitis and liver dysfunction and he was hospitalized for almost a week.   (PageID.958-59, 987).

On September 22, 2014, plaintiff was hospitalized after making a suicidal attempt in which he draped a belt over a pipe and had balanced on a table top until a neighbor talked him down off the table.   Plaintiff stated that he did not drink alcohol for a year, but relapsed when his grandmother died on August 25, 2014.   In addition, plaintiff denied ever using marijuana or other street drugs and denied ever abusing prescription drugs.   (PageID.987-1013).

On October 14, 2014, Ms. DeAnda-Ring and Nurse Overmyer generated a revised version of their February 5, 2014, medical summary.   (PageID.1015-27).

On October 28, 2014, the ALJ conducted plaintiff's administrative hearing. She heard testimony from three witnesses:   plaintiff, Ms. DeAnda-Ring, and the vocational expert.   Plaintiff's social worker testified in support of his claim for SSI benefits.   She indicated that she worked at InterAct of Michigan in Kalamazoo. (PageID.85).   Her initial professional contact with plaintiff was in 2010.   Closer to the period at issue, she saw plaintiff once a week in a group therapy setting and she met with plaintiff on case management issues such as housing.   She indicated that her job involved connecting plaintiff to resources and that she helped plaintiff complete a "slew of paperwork" to get his apartment.   (PageID.86, 92).   She testified that plaintiff had been kicked out of the InterAct program in 2013 because he had been drinking.   (PageID.87).   Plaintiff had managed to get himself banned from a local library where he spent his time using the library's Internet connection. Plaintiff was permitted to return to the InterAct program in about August 2013. (PageID.87-88).   Plaintiff's social worker indicated that plaintiff's ability to go to the library and do research on the Internet did not undermine her belief that plaintiff struggles with concentration.   She offered her opinion that plaintiff was unable to work.   (PageID. 90-91).

It was against this backdrop that the ALJ considered the various opinions regarding plaintiff's RFC that had been submitted for her consideration.   The ALJ

found that the RFC restrictions suggested by plaintiff's social worker[5] were entitled to little weight.   (*See* Op. at 9, PageID.51).   In addition, the ALJ found that the RFC restrictions suggested by Nurse Practitioner Overmyer and Dr. Bedi were entitled to little weight.   (*See* Op. at 9, PageID.51).

The Court finds no violation of the treating physician rule.   The opinions on which plaintiff relies were not the opinions of treating psychiatrists or physicians. Nurse Overmyer is a nurse practitioner and Ms. Deanda-Ring is a social worker. The treating physician rule did not apply to their opinions.   Social workers and nurse practitioners are not "acceptable medical source[s]."   *See* 20 C.F.R. § 416.913(a); *see also Bliss v. Commissioner*, 406 F. App'x 541 (2d Cir. 2011); *Turner v. Astrue*, 390 F. App'x 581, 586 (7th Cir. 2010); *Pastorino v. Commissioner*, No. 15-10918, 2016 WL 787132, at *1 (E.D. Mich. Feb. 29, 2016); *Thompson v. Commissioner*, No. 1:14-cv-464, 2015 WL 5665142, at * 15 (W.D. Mich. Sept. 24, 2014); *Drain v. Commissioner*, No. 14-cv-12036, 2015 WL 4603038, at *4 (E.D. Mich. July 30, 2015); *Harper v. Commissioner*, No. 1:13-cv-1014, 2015 WL 869207, at *3 (W.D. Mich. Feb. 27, 2015).

Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and

---

5 The ALJ noted that after plaintiff was released from jail, plaintiff had obtained a housing voucher, with Ms. DeAnda-Ring's assistance, and that plaintiff had been living on his own at an apartment since July 2014.   (Op. at 8, PageID.50). Plaintiff's economic needs, including his need for shelter, were important factors for his social worker, but they were not factors that the ALJ could consider in determining whether plaintiff was disabled.   (*Id.*).

(3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)).   The opinions of a nurse practitioner and a social worker fall within the category of information provided by "other sources." *Id.* at *2; *see* 20 C.F.R. § 416.913(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at *1, 4 (citing 20 C.F.R. §§ 416.912, .927).   This is not a demanding standard, and it was easily met here.

Dr. Tatineni and Dr. Bedi are acceptable medical sources, but they were not treating psychiatrists at any time during the period at issue:   February 13, 2014, through November 10, 2014.   Social security regulations define a "treating source" as a physician or other acceptable medical source who has had an ongoing treatment relationship with the claimant.   20 C.F.R. § 416.902; *see Coldiron v. Commissioner*, 391 F. App'x 435, 442 (6th Cir. 2010).   Whether a psychiatrist or physician is a "treating source" is determined as of the date the opinions at issue are supplied.   *See Karger v. Commissioner*, 414 F. App'x 739, 744 (6th Cir. 2011); *Kornecky v. Commissioner*, 167 F. App'x 496, 506 (6th Cir. 2006).   Here, Dr. Tatineni did not have any ongoing treatment relationship on the date he signed the documents that plaintiff emphasizes.   Although Dr. Tatineni "signed Exhibit 11F, he had stopped

treating the claimant in approximately August 2013 (Exhibit 8F)."   (Op. at 9, PageID.51).   The addition of Dr. Tatineni's signatures when he had no treating source relationship with plaintiff did not transform the opinions in Exhibit 11 (PageID.727-50) into the opinions of a treating physician.

There is no record of any treatment provided by Dr. Bedi.   Again, adding Bedi's signature to Nurse Overmeyer statements "did not transform those opinions into the opinions of a treating physician."   *See Fletcher v. Astrue*, No. 1:11-cv-1100, 2013 WL 4500334, at * 9 (W.D. Mich. Aug. 21, 2013).   Plaintiff did not present evidence establishing a treating physician relationship with Dr. Bedi.   *See Kornecky v. Commissioner*, 167 F. App'x at 506-07.   Because Dr. Bedi and Dr. Tatineni were not treating physicians during the period at issue, the ALJ was not "under any special obligation to defer to [their] opinion[s] or to explain why [s]he elected not to defer to [them]."   *Karger v. Commissioner*, 414 F. App'x at 744.

**2.**

Plaintiff argues that the ALJ committed error when she found that plaintiff's impairments did not meet the requirements of listings 12.04 and 12.06 because she did not adequately take the restrictions suggested by Doctors Bedi and Tatineni into account.   (Plf. Brief at 16-17, PageID.1052-53; Reply Brief at 2-3, PageID.1080-81). The issues of disability, RFC, and whether a claimant meets or equals the requirements of a listed impairment are issues reserved to the Commissioner.   *See* 20 C.F.R. § 416.927(d); *see Allen v. Commissioner*, 561 F.3d at 652.   Even in the case

- 19 -

of a treating physician or psychiatrist, if a treating source "submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is disabled, or unable to work, the claimant's RFC, or the application of vocational factors – his decision need only 'explain the consideration given to the treating sources opinion.' The opinion, however, 'is not entitled to any particular weight.' " *Curler v. Commissioner*, 561 F. App'x 464, 471 (6th Cir. 2014) (quoting *Johnson v. Commissioner*, 535 F. App'x 498, 505 (6th Cir. 2013) and *Turner v. Commissioner*, 381 F. App'x 488, 493 (6th Cir. 2010)).

It is well established that a claimant must show that he satisfies all the individual requirements of a listing. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

"Listing 12 addresses nine specific mental disorders and begins with a set of introductory instructions." *Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 2009). The listing's introductory instructions "are no less mandatory" than the individual listings. *Id.*; *see* 20 C.F.R. § 416.925(c)(2). The introduction states, "Each listing, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B

- 20 -

criteria (a set of impairment-related functional limitations). There are additional functional criteria (paragraph C criteria) in listings 12.02, 12.03, 12.04, and 12.06." Listings 12.04 and 12.06 contain identical paragraph B criteria.   The claimant has the burden of demonstrating at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.   A "marked" limitation is a degree of limitation that is more than moderate, but less than extreme.   20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *see Sullenger v. Commissioner*, 255 F. App'x 988, 993–94 (6th Cir. 2007); *Pascoe v. Commissioner*, 137 F. App'x 828, 844 n.18 (6th Cir. 2005).   The ALJ found that plaintiff did not meet the Part B severity requirements of listings 12.04 and 12.06 because he had "mild" restrictions in his activities of daily living, "marked" difficulties in maintaining social functioning, "moderate" difficulties of concentration, persistence or pace, and "no episodes of decompensation, which have been of extended duration."   The ALJ cited evidence supporting each of her findings. (Op. at 4-6, PageID.46-48).

Plaintiff's burden on appeal is much higher than identifying pieces of evidence on which the ALJ could have made a factual finding in his favor. The Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ. *Jones v. Commissioner*, 336 F.3d 469,

477 (6th Cir. 2003).   The ALJ's findings that plaintiff did not meet the requirements of listings 12.04 and 12.06 are supported by substantial evidence.

### 3.

Plaintiff argues that the ALJ violated 20 C.F.R. § 416.913(d) and SSR 06-03p because the ALJ did not adequately address the factor of length of time that plaintiff had been seeing Nurse Practitioner Overmyer and Ms. DeAnda-Ring.   (Plf. Brief at 18-19, PageID.1054-55).   Plaintiff's argument that the ALJ failed to give adequate consideration to the opinion of these "other sources" under 20 C.F.R. § 416.913(d) is rejected for the reasons stated in section 1.

Plaintiff generally invokes SSR 06-3p, but does not address any particular provision of that social security ruling.   SSR 06-3p clarifies how the Social Security Administration "consider[s] opinions from sources who are not 'acceptable medical sources.'"   *Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06–3p (reprinted at 2006 WL 2329939, at * 1 (SSA Aug. 9, 2006)). The ruling states that an ALJ should consider factors like those applicable to acceptable medical source opinions when reviewing other source opinions.   SSR 06-3p is phrased in permissive rather than mandatory terms. SSR 06-3p uses the permissive term "should" in connection with the ALJ's explanation of the "consideration" given to "other source" opinions:

- 22 -

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of the opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator should generally explain the weight given to the opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

2006 WL 2329939, at * 6.

The ALJ considered the factors listed in 20 C.F.R. §416.927(c).   (Op. at 7, PageID.49).   The ALJ determined that the although plaintiff has a lengthy psychiatric history, the level of restriction suggested by Ms. DeAnda-Ring and Nurse Practitioner Overmyer were not well supported for the period at issue and were not consistent with the record as a whole.   (Op. at 9, PageID.51).   Further, the ALJ was not required to conduct a factor-by-factor analysis in reviewing a treating physician's opinion, *see Garcia v. Commissioner*, No. 1:13-cv-501, 2015 WL 869191, at * 8 (W.D. Mich. Feb. 27, 2015), she certainly was not required to do so in addressing an "other source" opinions.   *See Curl v. Commissioner*, No. 1:13-cv-700, 2015 WL 6394173, at * 5 (W.D. Mich. Oct. 22, 2015); *Belasco v. Commissioner*, No. 1:14-cv-1778, 2015 WL 4094707, at * 10 (N.D. Ohio July 7, 2015).

### 4.

The remaining section of plaintiff's brief is labeled as a challenge to the ALJ's RFC finding because she "failed to adequately consider all Plaintiff's limitations."

(Plf. Brief at 19, PageID.1055).   The "example" cited was plaintiff's testimony that "his sleep [was] interrupted and his medications cause[d] daytime drowsiness.   He naps or nods off several times a day."[6]   (*Id.*).

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ.   *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).   The Court does not make its own credibility determinations.   *See Walters v. Commissioner*, 127 F.3d at 528.   The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ."   *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005).   The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard.   This is a "highly deferential standard of review."   *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir.   2012).   "Claimants challenging the ALJ's credibility determination face an uphill battle."

---

6 The other arguments listed in this section of plaintiff's brief (Plf. Brief at 19-20) are not adequately developed and are deemed waived.   Passing statements which fail to cite any supporting legal authority do not suffice. " 'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.' "   *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996); *accord Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014) ("[Plaintiff develops no argument to support a remand, and thus the request is waived.").

*Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the Court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the Court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge h[is] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ found that plaintiff's testimony claiming that he suffered from extreme drowsiness and needed to take naps was not credible. (*See* Op. at 7-8, PageID.49-50). The Court finds that the ALJ gave an adequate explanation of her credibility finding and that her finding regarding plaintiff's credibility is supported by more than substantial evidence.

## Conclusion

For the reasons set forth herein, the decision of the Commissioner will be affirmed.

Dated:   March 14, 2016                         /s/ Janet T. Neff
                                                Janet T. Neff
                                                United States District Judge